FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 19, 2024

_Conzález, C.J._
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 102045-7 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| ANTHONY RENE VASQUEZ, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | Filed: December 19, 2024 |

JOHNSON, J.—This case concerns the scope of resentencing following the grant of a CrR 7.8 motion to vacate a judgment and sentence (J&S). In *State v. Blake*,[1] we held the former simple possession statute was unconstitutional. In this case, based on *Blake*, the State conceded Anthony Vasquez was entitled to resentencing. At that resentencing, disagreement between the State and Vasquez arose over what the judge could consider in deciding on a new sentence. A new

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

sentence was imposed and appealed. The Court of Appeals, in a divided opinion, vacated and remanded for another sentencing hearing, holding that the trial court erred in limiting evidence from the defendant when it decided on a new sentence. *State v. Vasquez,* No. 38471-3-III (Wash. Ct. App. May 2, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/384713_unp.pdf, *review granted*, 2 Wn.3d 1027 (2023). We affirm the Court of Appeals and remand.

## FACTS AND PROCEDURAL HISTORY

The resolution of this case does not turn on the underlying facts, but we provide a brief overview for context. In 2013, Anthony Vasquez shot and killed Juan Garcia. Vasquez was 23 years old at the time. On the day of the shooting, Vasquez drove to Airport Grocery in Moses Lake. The victim, Garcia, was sitting in a vehicle in the grocery store parking lot with his girlfriend and her child. Vasquez exited his vehicle, walked around the corner of the store and up to Garcia's car. Vasquez shot Garcia at point-blank range, killing him.

A jury found Vasquez guilty of multiple offenses, including aggravated first degree murder, based on it being a drive-by shooting armed with a firearm; unlawful possession of a firearm; and tampering with a witness. Vasquez was sentenced to life without parole.

On appeal, the Court of Appeals vacated the aggravated murder conviction, concluding that Vasquez was too far from his vehicle at the time of the shooting,

about 63 feet from the car and around the corner of the store, for it to be considered a drive-by shooting. The court affirmed the rest of his convictions. Vasquez was resentenced, receiving an exceptional sentence above the standard range, to a total of 660 months. Vasquez appealed that J&S based on a clerical error, which the Court of Appeals accepted and remanded for the purpose of clarifying that the total time of confinement was to be 660 months.

Following this court's decision in *Blake*, Vasquez filed a CrR 7.8 motion for relief from judgment in 2021, stating that his J&S was invalid on its face and he was entitled to be resentenced based on the inclusion of a drug possession conviction. The State agreed and asked that since the offender score still exceeded the maximum of 9 under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, Vasquez be resentenced to an exceptional sentence of 610 months of total confinement on the remaining valid convictions. Using the "free crimes" aggravator,[2] the State asked that the resentencing court utilize the same formula the previous sentencing judge applied, essentially adding 40 months' imprisonment for each "point" in excess of the maximum for prior convictions, which constituted an exceptional sentence. Clerk's Papers at 95-97. The resentencing judge followed the analysis of the original sentencing judge, finding that Vasquez had a criminal

---

[2] "The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c).

history of over 9 points (11 points total) and that that score resulted in some of the current offenses going unpunished. The resentencing judge accepted the recommendation of the State and imposed an exceptional sentence of 620 months of total confinement, a reduction of 40 months. The judge specifically rejected Vasquez's request to consider his youth at the time of the crime based on *State v. O'Dell*[3] and would not hear arguments on that issue, but he did allow Vasquez limited allocution. Both the prosecutor and the defense attorney agreed that consideration of such arguments was not appropriate given the nature of a *Blake* resentencing, and the judge also agreed that a *Blake* resentencing is "limited." Rep. of Proc. (Sept. 30, 2021) (RP) at 16, 23, 32.

Vasquez appealed again, arguing that the superior court erred in failing to conduct a de novo resentencing and erred in failing to consider his relative youth at the time of the crime. The Court of Appeals majority agreed, holding that unless an appellate court specifically restricted resentencing to narrow issues, any resentencing should be de novo. It reasoned that a resentencing judge may consider the rulings made by an earlier judge but should still exercise their own independent discretion. The Court of Appeals majority noted that its decision does not require the resentencing judge give credence to the validity of any new arguments or evidence, only that the court should hear and decide anew the arguments and

---

[3] 183 Wn.2d 680, 358 P.3d 359 (2015).

evidence related to the sentencing decision. The concurrence/dissent in the Court of Appeals agreed that Vasquez should receive a new resentencing, but noted that on balance, resentencing courts should have the discretion, but not the obligation, to entertain new arguments and evidence. We granted review.[4]

ISSUES

1.  Whether the grant of Vasquez's CrR 7.8 motion to vacate and resentence gave the resentencing court the discretion to consider all sentencing issues anew.

2.  Whether the court had discretion to limit the parties' arguments in such a resentencing hearing.

ANALYSIS

The first question is whether, when a CrR 7.8 motion to vacate a judgment and conduct resentencing has been granted, the resentencing court has full discretion to consider sentencing issues raised by the parties. Vasquez asserts that resentencing is de novo and the court may consider any sentencing issues raised. The State asserts that Vasquez is entitled to a correction of his offender score but not a full resentencing. The State refers to this as a "'narrow resentencing'" and it was referred to as "limited resentencing" at the resentencing hearing conducted here. Suppl. Br. of Pet'r at 4; RP at 23. In this limited or narrow resentencing, the

---

[4] The Redemption Project of Washington filed an amicus brief in support of Vasquez.

State argues that the court may not consider all sentencing issues and is confined to a proportional adjustment of the sentence.[5]

The State asks that we treat this matter as a collateral attack, not an appeal. In the State's view, the trial court was limited to correcting the offender score and anything else was time barred. The State relies on *In re Personal Restraint of Coats*, 173 Wn.2d 123, 267 P.3d 324 (2011), and *In re Personal Restraint of Adams*, 178 Wn.2d 417, 427, 309 P.3d 451 (2013). *Coats* addressed what it means for a J&S to be invalid on its face, making an otherwise time barred petition timely under RCW 10.73.090. This is an appeal from a resentencing and not a challenge to the validity of the conviction itself.

In *Adams*, the defendant attempted to attack his convictions following a collateral attack under RCW 10.73.090 and .100, but the time bar exceptions do not serve to open the door to additional untimely claims arising from the same convictions. In contrast, Vasquez's sentence has been vacated and resentencing ordered after the grant of a CrR 7.8 motion. Therefore, the scope of resentencing

---

[5] Here, the State conceded that the J&S was invalid on its face and agreed to a resentencing hearing. The State has now suggested that it may have been an error to conclude that the J&S was invalid on its face justifying the court's grant of the CrR 7.8 motion. However, we accept the concession. Thus, we need not reach the question of the facial invalidity of Vasquez's J&S, and the resentencing in this case is distinct from those that occur in connection to a judicial determination that a J&S is facially invalid or otherwise qualifies for resentencing under one of the time bar exceptions under RCW 10.73.100. Accordingly, our holding in this case is limited to this procedural posture.

here differs from the scope of resentencing following a collateral attack. *Adams* and *Coats* are not applicable here.

The State argues that since the CrR 7.8 motion Vasquez filed in the superior court was a collateral attack his appeal of the resentencing decision to the Court of Appeals was also a collateral attack rather than a direct appeal. As such, the State contends that the defendant should have had to meet the high bar of a collateral attack in order to get relief from the Court of Appeals. We disagree. The decision of the superior court here to grant the CrR 7.8 motion and conduct a resentencing operated to vacate the previous sentence and create a new sentence and thus a new appealable decision. An order granting or denying a motion to vacate a judgment is appealable, by the defendant or by the State, under RAP 2.2.[6] *State v. Waller*, 197 Wn.2d 218, 224-25, 481 P.3d 515 (2021). While such a decision does not allow other untimely issues related to a conviction to be opened, the defendant has a right to appeal the new sentence. The distinction is important because the bar for relief for petitioners in a direct appeal is lower, and no requirement to demonstrate actual and substantial prejudice exists to get relief. *State v. Delbosque*, 195 Wn.2d 106, 129, 456 P.3d 806 (2020).

---

[6] "Unless otherwise prohibited or provided by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:
"....
"(10) Order on Motion for Vacation of Judgment. An order granting or denying a motion to vacate a judgment." RAP 2.2(a).

Here, once the superior court granted the CrR 7.8 motion, any previous sentence was vacated and resentencing occurred. *Waller*, 197 Wn.2d at 228. In *State v. McWhorter*, 2 Wn.3d 324, 535 P.3d 880 (2023), we made clear that ordering a resentencing hearing has the effect of vacating the original J&S. "'[U]ntil the trial court exercised its independent judgment by imposing a new judgment and sentence, there is 'no sentence,' and thus the resentencing order 'effectively vacat[ed] the judgment.'" *McWhorter*, 2 Wn.3d at 328 (emphasis and internal quotation marks omitted) (second alteration in original) (quoting *Waller*, 197 Wn.2d at 228).

Like the defendant in *Waller*, Vasquez filed a CrR 7.8 motion asking the superior court to vacate the existing sentence and set a resentencing hearing. Though the court here did not explicitly say that the prior sentence was vacated, it properly scheduled a resentencing hearing and assigned counsel for Vasquez. That action by the court vacated the earlier J&S, and no sentence remained until the court conducted a new resentencing hearing. At that hearing, a resentencing judge has wide discretion to consider what sentence is appropriate, the same as exists in any sentencing. Such a decision necessarily allows the court to consider all arguments and evidence presented.

We have repeatedly recognized that the discretion of a resentencing court is broad and can be exercised either for or against the petitioner. For example, in

*State v. Collicott*, 118 Wn.2d 649, 658, 827 P.2d 263 (1992) (plurality opinion), we recognized that a resentencing court may impose an exceptional sentence if it finds substantial and compelling reasons to do, even if the earlier sentencing court did not impose an exceptional sentence.

Similarly, in *State v. Brown*, 193 Wn.2d 280, 440 P.3d 962 (2019), we referenced the same rule from *Collicott* and added that the resentencing court may consider subsequent events in sentencing decisions. "Generally, a trial judge may impose a new sentence that is greater or less than the sentence originally imposed based on events subsequent to the first trial that may throw new light on the defendant's life, health, habits, conduct, and mental and moral propensities." *Brown*, 193 Wn.2d at 288 (citing *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)).

In *State v. Kilgore*, 167 Wn.2d 28, 216 P.3d 393 (2009), we also acknowledged the broad discretion of the resentencing court. We stated that on remand, a trial court may review and resentence a defendant or may simply correct and amend the original J&S on affirmed convictions. *Kilgore*, 167 Wn.2d at 40. Though a trial court's discretion to resentence can be limited by an appellate court's mandate, where no such limitation exists, the trial court has the authority to consider issues and evidence that were not the subject of earlier proceedings. *Kilgore*, 167 Wn.2d at 42.

In this case, there was no appellate court limitation, so the resentencing court's discretion was at its broadest. Additionally, the resentencing court had itself vacated the earlier sentence, so there was nothing about the prior J&S that had to be preserved. The resentencing court was thus not bound to the decision of the earlier sentencing judge and had broad discretion to depart from an earlier sentence and consider sentencing issues that may not have been considered previously. Simply put, a "limited" or "narrow" resentencing does not exist when a J&S has been vacated.

The second question of this case asks whether the court has the discretion to limit the parties' arguments in a resentencing hearing. The State argues that even if the case is not controlled by the holding in *Adams*, the trial court has discretion to limit the scope of sentencing when an offender score is corrected. The State claims that the resentencing judge had discretion to follow the original sentencing judge's method, had the discretion to not reopen aspects of the sentence that were not part of the error being corrected, and could limit the parties' ability to present arguments. The State relies on *State v. Barberio*, 121 Wn.2d 48, 846 P.2d 519 (1993), *Kilgore*, and *In re Personal Restraint of Rowland*, 149 Wn. App. 496, 204 P.3d 953 (2009).

While those cases are somewhat helpful, they do not resolve the issues here. Both *Barberio* and *Kilgore* correctly recognized that a trial court has discretion on

remand to revisit the sentences of affirmed convictions. Vasquez's case involves a J&S that was vacated but the convictions remained. *Rowland* presents a more similar issue, which recognized that on remand, a trial court has discretion whether to reduce an exceptional sentence. Vasquez does not argue that the court lacks discretion on whether to make a change to a sentence but, instead, challenges whether a trial court may preclude new arguments and evidence when a sentence has been vacated and a new sentencing hearing has been ordered.

The text of the SRA provides support for the resentencing that Vasquez requests. First, the SRA does not provide any mention of a "limited" or "narrow" resentencing hearing. No statutory section mentions "resentencing" limits or what may be considered or presented at such a hearing. The SRA includes a section on "sentencing hearings," which must be held before imposing a sentence on a defendant. That section provides, "The court *shall* . . . allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed." RCW 9.94A.500(1) (emphasis added). Additionally, the SRA provides that "[o]n remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." RCW 9.94A.530(2).

11

The SRA establishes that the arguments must at least be heard, regardless of whether it is a sentencing or resentencing proceeding. From there, the judges have the authority to consider the arguments raised by the parties and to make their own determination about what to consider in their final decision. Here, the State agreed to a resentencing and then erred in attempting to restrict the scope of what could be considered in the resentencing hearing.

At the sentencing hearing, both the prosecutor and the defense attorney for Vasquez repeatedly called the hearing "limited." After Vasquez requested that he be allowed to present arguments on the application of *O'Dell*, his attorney expressed that he thought the resentencing was narrow in scope and that it was improper to make an argument for mitigation down. RP at 25. The State argued that Vasquez was barred from making the *O'Dell* argument because it was not asserted at an earlier sentencing and thus Vasquez waived the contention.[7] RP at 17. The court apparently accepted those statements.

The judge did allow the State to provide a brief summary of what had happened in the case. The judge differentiated the matter as a "*Blake* resentencing." RP at 18, 23. He stated that he did not want to look at some of the

---

[7] As the Court of Appeals addressed, Vasquez did not ask for an exceptional sentence downward at the first resentencing, so the Court of Appeals declined to address it on appeal and the merits were not reached. The posture here is different, and Vasquez properly raised the argument at the second resentencing.

proffered evidence because it would overemphasize certain parts of the case when he did not have the chance to view the entirety of the trial. RP at 18. The judge continued to differentiate the proceeding as a "*Blake* resentencing" throughout. When it came to hearing from the victim's families, the judge said it would hear from them, but he again reiterated it was a "fairly limited resentencing hearing as far as the Court is considering it." RP at 23.

The judge did allow Vasquez limited allocution based on the *O'Dell* issue, but he stated that while the court would hear from Vasquez, it would not be taking a more formal argument or legal analysis. RP at 27-28. When the judge gave his determination, he stated, "My intention here, especially under a *Blake* resentencing, which as both sides have pointed out is fairly limited, is I did want to try to honor what Judge Antosz did being the judge who was involved in the trial, involved in the earlier sentencing." RP at 32. He went on to say that there was no reason to take a different approach because the only thing that had changed was the *Blake* issue. He also pointed out that both Judge Antosz and he himself had somewhat considered the age of Vasquez at the time, concluding, "I feel that on balance, though, regardless, it doesn't appear that a downward departure is warranted based on the information at least that the Court has had." RP at 32.

The error occurred in treating a resentencing hearing as "limited" in scope. It is a sentencing hearing, which is not limited in scope. The record is unclear

whether the judge felt bound by the prior judge's decision or followed that decision exercising his own discretion. However, Vasquez did not get the "de novo" resentencing that the SRA requires. Since there was significant ambiguity in the record, with the court seemingly misunderstanding its discretion, a resentencing is appropriate, where the proper level of discretion can be exercised.

We hold that at a resentencing hearing, the court has the same discretion as an original sentencing judge. The parties have the same opportunity to present mitigating and aggravating factors at the resentencing as they have at an original sentencing. Under the SRA, a judge is free to consider any and all issues related to sentencing and to decide which factors to consider and apply in reaching a final decision. The important components of the process are that parties be allowed to present their arguments and that the judge exercises their independent discretion in sentencing.[8]

CONCLUSION

We affirm the Court of Appeals and remand for a new resentencing hearing.

---

[8] We emphasize, as the Court of Appeals did, that our decision makes no assessment of the value of the factors argued and does not require the resentencing court to give any weight or credence to the arguments of either party.

Johnson, J.

WE CONCUR:

Owens, J.

Stephens, J.

Whitener, J.

15

*State v. Vasquez (Anthony Rene)*

No. 102045-7

MADSEN, J. (concurring)—Based on the unique procedural posture of this case, I agree with the lead opinion that a full resentencing was proper. However, I write separately to emphasize why it was proper in this unusual circumstance.

Subsequent to this court's decision in *State v. Blake*, Anthony Vasquez filed a CrR 7.8 motion for relief from judgment, stating his judgment and sentence was invalid on its face and that he was entitled to resentencing. 197 Wn.2d 170, 481 P.3d 521 (2021). The State did not argue that the matter be transferred to the Court of Appeals to be decided as a personal restraint petition (PRP), nor did it object to the trial court resentencing Vasquez.[1] The superior court granted the motion and proceeded with resentencing, vacating Vasquez's previous judgment and sentence.[2] Given the procedural posture of

_____

[1] It is likely that the trial court erred in granting Vasquez relief under CrR 7.8 and should have transferred the case to the Court of Appeals to be treated as a PRP. *State v. Molnar*, 198 Wn.2d 500, 509, 497 P.3d 858 (2021) (motion for resentencing was an untimely collateral attack that should have been transferred to the Court of Appeals for consideration as a PRP). However, that issue is not before us because the State did not object and did not raise this argument on appeal.

[2] Although the trial court did not explicitly state that it was vacating Vasquez's prior judgment and sentence, it implicitly did so when it granted the CrR 7.8 motion and proceeded with resentencing. *See State v. Waller*, 197 Wn.2d 218, 228, 481 P.3d 515 (2021). The State did not object to the trial court's vacation of Vasquez's judgment and sentence.

this case, and since this court is not in the business of raising arguments for parties sua

sponte,[3] the focus of this case, both in the Court of Appeals and here, is on the scope of

resentencing once a judgment and sentence has been *vacated*. Since Vasquez received a

new sentence, he has a right to appeal the new sentence. Therefore, his case is treated

akin to a direct appeal as opposed to a collateral attack. This means that Vasquez does

not need to demonstrate actual and substantial prejudice or a complete miscarriage of

justice to obtain the relief he requests.[4] *State v. Ross*, 152 Wn.2d 220, 229, 95 P.3d 1225

(2004) (erroneous sentences based on incorrect offender scores may be challenged for the

first time on appeal); *State v. Wilson*, 170 Wn.2d 682, 690, 244 P.3d 950 (2010) (error in

sentencing based on an incorrectly scored prior conviction was a legal error entitling the

defendant to resentencing). In *Wilson*, the defendant did not need to show that the error

was facially apparent on the judgment and sentence since the case was a direct appeal,

not a collateral attack. *Id*. at n.4.

However, under a different set of circumstances, a full resentencing would not be

the proper remedy. In *State v. Kelly*, No. 102002-3 (Wash. Dec. ___, 2024), the

defendant sought *Blake* relief—namely, vacation of the *Blake*-related convictions from

his judgment and sentences. It is clear that Kelly was entitled to relief, given that *Blake*

---

[3] *State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999) ("[W]e are not in the business of inventing unbriefed arguments for parties sua sponte.").
[4] Since Vasquez's case is not being treated as a collateral attack, no time bar arguments are presented.

was a significant and material change in the law that has been applied retroactively. The question was the extent of relief he should be afforded.

Similar to Vasquez, the vacation of the drug possession convictions reduced Kelly's offender scores; consequently, he was originally sentenced using incorrect offender scores. However, in *Kelly*, we determined that the proper relief was not full resentencing but only the vacation of the drug possession convictions from his judgment and sentences. This is because, unlike here, Kelly's appeal from his sentence was treated as a collateral attack. Kelly's sentence was never vacated, and although the trial court entered a scheduling order for a "*Blake* resentencing," this did not operate to vacate his judgment and sentences. *See State v. Kilgore*, 141 Wn. App. 817, 822, 172 P.3d 373 (2007) (plurality opinion), *aff'd*, 167 Wn.2d 28, 216 P.3d 393 (2009) (noting the trial court scheduled "a so-called 'resentencing' hearing," the trial court ruled it was hearing a legal argument rather than conducting a resentencing). Nor did the vacation of the *Blake*-related convictions result in a vacation of Kelly's entire judgment and sentences.

In *Kelly*, the trial court allowed both sides to present their arguments for resentencing, and the trial court denied resentencing for one of Kelly's cases and slightly altered a separate sentence by running two firearm enhancements concurrently as opposed to consecutively. The State successfully argued to the Court of Appeals that Kelly's challenge to his previous judgment and sentences from 2006 and 2009 were collateral attacks. Thus, in addition to showing facial invalidity, or one of the other exceptions under RCW 10.73.100, Kelly had to demonstrate that being sentenced using

3

an incorrect offender score was a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990).

Kelly was unable to demonstrate that the incorrect offender scores affected him, as required by subsection .100(6), or that the trial court exercised a power it did not have at sentencing, as required by subsection .090(1), since his standard sentencing ranges remained unchanged even with the corrected offender scores. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 136, 267 P.3d 324 (2011) ("[W]e have regularly found facial invalidity when the court actually exercised a power it did not have."). Therefore, a full resentencing was not the proper remedy in Kelly's case.

We must have some respect for the finality of judgments. Whether a full resentencing is proper will depend on the procedural posture of the case. However, a resentencing that follows a successful collateral challenge is subject to statutory limits and principles of finality.

With these considerations in mind, I respectfully concur.

_____
Madsen, J.

_____
Stephens, J.

_____
Yu, J.

No. 102045-7

GORDON McCLOUD, J. (concurring)— In *In re Personal Restraint of Fletcher*, we held that a judgment and sentence (J&S) that shows "serious sentencing calculation errors" is "invalid on its face" and, hence, exempt from the usual one-year time limit on personal restraint petitions. 3 Wn.3d 356, 359, 552 P.3d 302 (2024) (referring to RCW 10.73.090's directive to apply the one-year time limit only if the J&S is "'valid on its face'").

What is a sentencing error that is so "serious" that it makes the J&S invalid on its face? In *Fletcher*, it was a J&S that included "washed out" prior juvenile offenses[1] that should not have been counted but that produced "a standard range for assault that is more than *three times* the standard range actually permitted by the SRA." *Id.* at 373. And in *Fletcher*, the judge imposed a sentence that started

_____

[1] A "washed out" conviction or juvenile adjudication is a committed offense that no longer counts towards a defendant's offender score. *See, e.g.*, *In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 4, 100 P.3d 805 (2004) ("Before the 1997 amendment to the SRA [Sentencing Reform Act of 1981, ch. 9.94A RCW], offenses committed before age 15 were often described as washed out because they were not included in defendants' criminal histories nor used to calculate their offender scores.").

1

from but ultimately departed above an incorrectly calculated, extremely high range

without realizing how wrong that range was. *Id.* We therefore concluded that the

sentencing miscalculation error was serious, that it was apparent from the face of

the J&S and hence rendered that J&S invalid, and that "the facial error on

[Fletcher's] J&S constitutes a fundamental defect that inherently resulted in a

complete miscarriage of justice." *Id.* at 368. The error was material and it caused

prejudice. We therefore granted Fletcher's personal restraint petition (PRP). *Id.* at

384.

In *In re Personal Restraint of Richardson*, in contrast, we held that a J&S

that shows a sentencing error that did not affect the calculation of the offender

score,[2] did not affect the determination of the seriousness level, and did not affect

the standard range, was not as serious. 200 Wn.2d 845, 847, 525 P.3d 939 (2022)

(Ord.). We reasoned that the sentencing court was working with the correct

offender score, the correct calculations, and the correct standard range, so it had

---

[2] As the *Richardson* decision explains, Richardson's offender score was originally "10" but it included a prior conviction for possession of a controlled substance. 200 Wn.2d 845, 846-47, 525 P.3d 939 (2022). Our decision in *State v. Blake* invalidated that conviction, so Richardson sought resentencing without consideration of that prior unconstitutional conviction. *Id.* at 847 (citing 197 Wn.2d 170, 481 P.3d 521 (2021)). But removal of that prior unconstitutional conviction reduced his absolute offender score only from 10 to 9, and the top end of the range for calculating standard ranges is 9+—meaning 9 or anything above 9. *Id.* (citing RCW 9.94A.510 (highest standard range reached at offender score of "9 or more")). Thus, Richardson's offender score remained squarely in the 9+ column and his standard sentence range remained exactly the same. *Id.*

basically the correct information. *Id.* As a result, the error on the face of the J&S was not serious enough to make that J&S invalid: "The superior court imposed a sentence within th[e] [correct standard sentence] range and therefore the sentence was authorized. In this circumstance, the judgment and sentence is not facially invalid." *Id.* Since the J&S was "not facially invalid," the PRP was untimely, and we did not even discuss the merits of the claim. *Id.* (If we had, we likely would have said that the error was not material and did not cause prejudice.)

A brief but accurate summary of the holdings of those two cases is (1) the errors apparent from the face of the J&S in *Fletcher* mattered, and the remedy was to correct the error that made the J&S invalid and (2) the errors apparent from the face of the J&S in *Richardson* didn't matter *as much* and, hence, didn't need to be corrected as much. *Fletcher*, 3 Wn.3d at 372; *Richardson*, 200 Wn.2d at 847.

It's worth emphasizing the difference between facial errors that really matter and facial errors that don't matter as much. In Fletcher's case, the facial errors changed his offender score and his standard sentence range dramatically and deprived the trial court of critical information that must form the starting point for SRA sentencing, even if the sentence departs from the standard range. *Fletcher*, 3 Wn.3d at 372-73 (citing *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002); *In re Pers. Restraint of Call*, 144 Wn.2d 315, 332, 28 P.3d 709

3

(2001); *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 569, 933 P.2d 1019

(1997)). The facial error in Richardson's case, in contrast, had no practical effect.

200 Wn.2d at 847 ("Removing from the offender score the prior conviction . . .

reduces the score from 10 to 9, but at a score of 9 Richardson's standard range

remains 471 to 608 months." (citing RCW 9.94A.510)).

To be sure, sentencing courts should avoid making all mistakes, big or small.

And it's always a mistake to count invalid prior or current convictions in a

defendant's offender score. *See Call*, 144 Wn.2d at 332.[3] But if the error does not

affect the offender score, does not affect the standard sentence range, and does not

deprive the sentencing court of accurate calculations on those points, then that

error does not necessarily require attention in an out of time collateral challenge.

*Richardson*, 200 Wn.2d at 847.

Thus, the only real question in this case—in which Vasquez seeks relief long

past the one-year time limit—is whether the sentencing errors in his J&S were

serious enough to have a practical effect or not.

---

[3] *See generally State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719 (1986) ("[A] prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered." (citing *In re Pers. Restraint of Bush*, 26 Wn. App. 486, 497-98, 616 P.2d 666 (1980); *United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967))).

The answer in this case is no, the errors are not that serious. The sentencing errors on the face of the J&S in Vasquez's case are more like the sentencing error on the face of the J&S in *Richardson* than the one on the face of the J&S in *Fletcher*. The Vasquez J&S errs in counting an unconstitutional prior drug possession conviction. But that error did not increase Vasquez's offender score or change his standard range. For that reason, the rule of *Richardson* would generally apply to this situation (the rule that courts do not reach the merits of an untimely PRP if the sentencing error on the face of the J&S does not affect the sentencing calculations) and the rule of *Fletcher* would not (the rule that courts do reach the merits of an otherwise untimely PRP if the face of the J&S shows a serious sentencing calculation error, and courts do grant such PRPs).

However, there is one critical distinction between the procedure in this case and the procedure in *Richardson.* In this case, as the lead opinion states:

> [T]he State conceded that the J&S was invalid on its face and agreed to a resentencing hearing. The State has now suggested that it may have been an error to conclude that the J&S was invalid on its face, justifying the court's grant of a 7.8 motion. However, we accept the concession.

Lead opinion at 6 n.5. In other words, the State did not raise the one-year time limit as a defense and affirmatively "conceded" that the PRP was timely.

*State v. Vasquez (Anthony Rene)*, No. 102045-7
(Gordon McCloud, J., concurring)

The State's decision to decline to raise the time bar in the trial court has

consequences. Whether we call it a waiver of the statute of limitations defense,[4] or

an invited error,[5] or a forfeit error,[6] or simply acquiescence, the State has agreed to

Vasquez's request for resentencing.

As a result, the trial court properly reached the merits  and

granted relief, regardless of whether the identified error makes the J&S facially

---

[4] The statutory time limit in RCW 10.73.090 on PRPs is a statute of limitations. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 939, 952 P.2d 116 (1998) (quoting RAP 18.8(a)). The rule-based time limit on CrR 7.8 motions is based on the statutory time limit on PRPs. CrR 7.8(c)(2) (requiring transfer of CrR 7.8 motion to Court of Appeals as PRP unless motion is timely under RCW 10.73.090's PRP time limit and satisfies other requirements); RAP 16.4(d) (requiring relief through PRP only if "other remedies . . . are inadequate" and relief granted under RCW 10.73.090-.100, which includes time limit). Such statute of limitations defenses are waived if not raised. *State v. Loos*, 14 Wn. App. 2d 748, 759, 473 P.3d 1229 (2020) ("a defendant can waive a statute of limitations defense by failing to raise it in the trial court and an express waiver is not required"); *Matthies v. Knodel*, 19 Wn. App. 1, 5, 573 P.2d 1332 (1977) (per curiam) ("There is a waiver of certain defenses under the civil rules if they are not affirmatively pleaded in the answer." (citing CR 8 and 12(b)).

[5] *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002) (holding that a party cannot either intentionally or accidentally set up an error and then "'complain[] of it on appeal'" (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled in part on other grounds by State v. Olson*, 126 Wn.2d 315, 319, 893 P.2d 629 (1995))); *see also State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999).

[6] RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); *Bengtsson v. Sunnyworld Int'l, Inc.*, 14 Wn. App. 2d 91, 110, 469 P.3d 339 (2020) (declining to consider argument on appeal not raised in trial court (citing *Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 829 n.4, 425 P.3d 871 (2018))).

invalid. And the lead opinion properly holds that if the defendant is entitled to a resentencing, then under the SRA, that must be a true resentencing.[7]

I therefore join the lead opinion in its conclusion that Vasquez is entitled to relief.

_____
Gordon McCloud, J.

_____
González, C.J.

_____
Montoya-Lewis, J.

---

[7] I understand that this conclusion—that when a trial court grants a CrR 7.8 motion for resentencing, the ensuing resentencing must be a real, full resentencing—forms the core of the lead opinion's holding today. And I concur fully in that holding. However, the lead opinion's footnote 5 contains assertions that stand in tension with that holding. That footnote claims that the only reason Vasquez is entitled to a real, full resentencing is that the State conceded that Vasquez's J&S was facially invalid. The footnote further claims that resentencing following a judicial determination of facial invalidity would somehow be more limited. Lead opinion at 6 n.5. But these assertions are not supported by the lead opinion's above-the-line analysis, which squarely rejects the idea that a "narrow resentencing" is appropriate once the court grants a *Blake* (or similar) resentencing motion. *Id*. at 10. The lead opinion's analysis makes clear that Vasquez was entitled to a full resentencing because the court's decision to grant his CrR 7.8 motion and order a resentencing hearing operated to vacate his existing sentence. *Id*. at 7. Vasquez was not entitled to a full resentencing solely because the State conceded timeliness or because the State did not oppose resentencing, as footnote 5 suggests.

7