# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57527-2-II |
| Respondent, | Consolidated with |
| v. | |
| JOHN MICHAEL SANCHEZ, | No. 57040-8-II |
| Appellant. | |
| In the Matter of the Personal Restraint of: | |
| JOHN MICHAEL SANCHEZ, | UNPUBLISHED OPINION |
| Petitioner. | |

MAXA, P.J. – John Sanchez appeals from his resentencing following a successful appeal in which this court reversed his sentence and remanded this case for resentencing. Sanchez also raises issues in a personal restraint petition (PRP) that has been consolidated with this appeal.

In 2019, Sanchez pleaded guilty to several offenses and received an exceptional sentence of 176 months. On appeal, this court remanded for resentencing because a 2018 conviction that was included in his offender score had been vacated. At resentencing, the trial court declined to address any new issues or arguments, determining that its role was to determine whether the

original sentencing court would have imposed the same sentence if Sanchez's offender score was reduced by one point. The trial court reimposed the original sentence.

We hold that (1) the trial court erred when it failed to conduct a full resentencing on remand from this court; (2) on remand, the trial should determine whether to consider Sanchez's evidence of rehabilitation, whether the sentence should be run consecutively to his new sentence for the 2018 conviction, and his challenges to several community custody conditions, a no-contact order imposed as a part of his sentence, and the imposition of the crime victim penalty assessment (VPA); and (3) Sanchez fails to demonstrate in his PRP that his guilty plea was invalid. We decline to address the issues that Sanchez raises in his statement of additional grounds (SAG) that pertain to alleged errors before his guilty plea and during the original sentencing or the 2018 conviction because they are outside the scope of this appeal.

Accordingly, we reverse Sanchez's sentence and remand for a full resentencing, and we deny his PRP.

FACTS

*Background*

This court's opinion in Sanchez's first appeal provides a summary of the nature of Sanchez's offenses and his original charges:

> In September 2017, Sanchez sent his ex-girlfriend, RN, approximately 300 threatening and harassing text messages even though she had a no contact order against him. Sanchez then gained entry into RN's home by convincing their seven-year-old child to let him in. Sanchez refused to leave the house for the next 19 hours, and he slapped RN and had sexual intercourse with her against her will.

> The State initially charged Sanchez with residential burglary, stalking, two counts of violating a no contact order, unlawful imprisonment, and assault in the fourth degree, all with domestic violence designations under cause no. 17-1-01676-34 (the 2017 case). Several months later, while incarcerated awaiting trial, Sanchez made phone calls and sent letters to RN that led to additional witness tampering charges under cause no. 18-l -02130-34 (the 2018 case).

2

*State v. Sanchez*, No. 53296-4-II, slip op. at 2 (Wash. Ct. App. Jan. 25, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053296-4-II%20Unpublished%20Opinion.pdf.

In January 2019, the State filed an amended information that charged Sanchez with 16 counts, including first degree rape and first degree burglary with sexual motivation.[1]

During jury selection in April 2019, Sanchez decided to plead guilty to first degree burglary, indecent liberties, witness tampering, violation of a pretrial no-contact order, and gross misdemeanor cyberstalking. Each of these offenses included a domestic violence aggravator.

*Original Sentencing*

The trial court sentenced Sanchez in May 2019. Sanchez's criminal history included a witness tampering conviction in the 2018 case. Sanchez's offender scores for the four felony offenses, including the points for the 2018 case, were 10 points for first degree burglary, 11 points for witness tampering, 13 points for indecent liberties, and 10 points for the no-contact order violation conviction.

The trial court imposed standard range sentences of 116 months on the first degree burglary and indecent liberties convictions, 60 months on the witness tampering and no-contact order violation convictions, and 364 days on the gross misdemeanor cyberstalking conviction. Each of these sentences was at the top of the standard sentencing ranges for the offenses.

The trial court then imposed an exceptional sentence by ordering the sentences for the first degree burglary, indecent liberties, no-contact order violation, and cyberstalking convictions to be served concurrent with each other but consecutive to the standard range sentence on the

---

[1] The other charges were: one count of felony violation of a pretrial no-contact order, seven counts of felony violation of a pretrial no-contact order – third or subsequent violation, three counts of witness tampering, two counts of bribing a witness, and one count of gross misdemeanor cyberstalking.

witness tampering conviction. This resulted in a total sentence of 176 months. The court also ordered that these sentences would run consecutively to the sentence in the 2018 case.

The trial court entered findings of fact and conclusions of law supporting the exceptional sentence. It found that the exceptional sentence was justified under the free crimes aggravator, RCW 9.94A.535(2)(c). Despite having found Sanchez indigent, the court imposed a $500 VPA. The court also required Sanchez to abide by the community conditions stated in Appendix H to the judgment and sentence and imposed a no-contact order prohibiting Sanchez from directly or indirectly contacting RN.

*Appeal and Remand for Resentencing*

Sanchez appealed his convictions and his sentence. In 2020, while the appeal was pending, this court reversed the witness tampering conviction in the 2018 case and remanded the 2018 case for a new trial. *State v. Sanchez*, 14 Wn. App. 2d 261, 263, 471 P.3d 910 (2020); *Sanchez*, No. 53296-4-II, slip op. at 14.[2]

In January 2022, this court reversed the sentences in this case and remanded the case for resentencing because of the reversal in the 2018 conviction. *Sanchez*, No. 53296-4-II, slip op. at 2, 27. Although Sanchez's offender scores in this case all would remain above 9 points for each offense, the court "reverse[d] the sentence and remand[ed] for correction of the offender score and resentencing consistent with [its] opinion." *Id.* at 30.

The court stated, "We agree that the reversed conviction requires *resentencing*." *Id.* at 26 (emphasis added). When discussing the fact that Sanchez's offender score would remain 9 points or above on each current conviction, the court commented that the case still must be remanded for resentencing because it was not clear from the record whether the trial court would

---

[2] Sanchez later pleaded guilty again to the same offense that had been vacated.

have imposed a different sentence if the offender scores were a point lower. *Id.* at 27. Specifically, the court stated, "[A]lthough the trial court was clear about its reasoning for imposing the current witness tampering sentence consecutive to the other sentences, the record does not clearly indicate that the court would have imposed the same sentences for each conviction should the offender score have been different." *Id.* The court declined to address whether the imposition of the exceptional sentence was an abuse of discretion because the court was "remanding for resentencing." *Id.* at 28.

*PRP*

While Sanchez's appeal in this case was pending, he filed a motion in the trial court seeking modification of Appendix H[3] in its entirety or modification of certain community custody conditions imposed in Appendix H. The trial court transferred the motion to this court for consideration as a PRP under CrR 7.8.

*Resentencing*

In its sentencing memorandum for the resentencing, the State argued that the resentencing court should impose the same exceptional sentence as before.

In his sentencing memorandum, Sanchez argued that this court's remand was for a full resentencing and that this court did not limit the scope of the resentencing in any way, so the resentencing court was not required to impose the same sentence. Sanchez noted that in his appeal, this court had refused to address the exceptional sentence specifically because it was remanding for a "full resentencing." Clerk's Papers (CP) at 517. He also argued that the sentences in the current case should run concurrent to the sentence in the 2018 case.

---

[3] The motion refers to Appendix F, but it is clear from the context that Sanchez was attempting to challenge the conditions in Appendix H.

Sanchez also argued that there were several reasons not to impose an exceptional sentence based on the free crimes aggravator, including the rehabilitative steps he had taken during his incarceration, which included mental health treatment. And he argued that there were cases that permitted the court to consider his rehabilitation, to the extent it related to the circumstances of the crimes and his culpability, in the context of imposing standard range sentences.

The resentencing hearing was held in October 2022, before a different judge. At the start of the hearing, the trial court acknowledged that the resentencing was the result of this court's opinion in Sanchez's first direct appeal.

As it had in its sentencing memorandum, the State asked the trial court to reimpose the original sentence because nothing had changed since the original sentencing. Specifically, the State noted the facts of the case remained the same and that Sanchez's criminal history had not changed.

After hearing from counsel, the trial court asked Sanchez if there was anything else the court should know before imposing sentence. In a lengthy statement, Sanchez presented several personal references from friends and family, asserted that he had community support, noted that he was receiving mental health treatment, and presented evidence of his good behavior and positive achievements while incarcerated. He also asserted that his community custody provisions should be considered because they were based on a tainted presentence investigation report (PSI). Ultimately, Sanchez requested standard range concurrent sentences.

Immediately after hearing from counsel and Sanchez, the trial court stated,

> It's important for the Court to recognize and let the record reflect that *there's really a singular issue before this Court*.
> . . . .

6

[The] Court of Appeals noted, quote, "Although the trial court was clear about its reasoning for imposing the current witness tampering sentence consecutive to the other sentences, the record does not clearly indicate that the court would have imposed the same sentences for each conviction should the offender score have been different," closed quote. Quote, "We affirm the trial court's decision not to consider any of (Mr. Sanchez's) charges to be the same criminal conduct, but we remand for the trial court to correct (Mr. Sanchez's) judgment and sentence and resentence him in light of the reversed conviction." I'll repeat that. "Resentence him in light of the reversed conviction."

*So the salient factor for the Court to consider in resentencing Mr. Sanchez is that he has one less point.*

Rep. of Proc. (RP) (Oct. 31, 2022) at 22-24 (emphasis added).

At this point, the State interrupted the trial court and advised the court that Sanchez since had pleaded guilty to the 2018 offense that had been vacated, so there was no change in his offender score. The court responded,

So the offender score remains the same. It was nine plus going in. It's nine plus here. And when the Court was considering -- when the Court reviewed Court of Appeals' opinion, and was considering *the mandate from Court of Appeals which was essentially asking this Court as the sentencing court to determine whether, quote, "the court would have imposed the same sentences for each conviction,"* closed quote, *it begged the question in this Court's mind, well, how do I know what was in the mind of the sentencing court?* This Court didn't sentence Mr. Sanchez, so I don't know what was going on; taken at face value, I don't know what was going on in [the original sentencing judge's] mind. So I reviewed the transcript of the hearing.

RP (Oct. 31, 2019) at 24-25 (emphasis added).

The trial court then stated,

[The original sentencing court's] analysis was articulate, and it's clear to this Court that the factors that he took into consideration in imposing the sentence were well reasoned. And I'll make some reference to some of those comments because, again, *what it comes down to is whether "the court would have imposed the same sentences for each conviction should the offender score have been different."*

RP (Oct. 31, 2019) at 26 (emphasis added).

The trial court further stated that it had reviewed all the information supplied to the original court at sentencing, the arguments and recommendations made in the original sentencing, the Department of Corrections' input, and Sanchez's objections to the PSI. After closely examining and discussing the portion of the original sentencing in which the original court discussed the exceptional sentence, the court stated,

> So using that as a basis, taking into account the mandate from the Court of Appeals, it is clear to this Court that the record does indicate that the sentencing court "would have imposed the same sentences for each conviction," closed quote. So that answers the question that this Court is required to answer pursuant to the mandate for the Court of Appeals. The record is clear, that would have been and is the -- that the sentencing court would have imposed the same sentence. The record is clear from [the original sentencing court] with respect to [its] rationale thought process, the exercise of [its] discretion, and the factors set forth in RCW 9.94A.110, and the non[-]statutory factors the Court is allowed to take into consideration.

RP (Oct. 31, 2019) at 30-31.

The trial court then concluded that "[i]t would be error for this Court to take into consideration in reaching its decision or in relying upon certain good behavior on the part of Mr. Sanchez." RP (Oct. 31, 2019) at 33. The court stated that a defendant's good conduct following the commission of a crime is not a factor that relates to the crime itself or to the defendant's criminal record, so it should not be considered at sentencing.

The trial court further concluded that it was clear that the trial court would have imposed the same sentence had the one offense in the offender score been vacated and that it would "enter a judgment and sentence that is consistent with the judgment and sentence that was originally entered in this case." RP (Oct. 31, 2019) at 33. The court stated, "The Court finds that its role and duty and responsibility in this regard is dictated by the language in the Court of Appeals' decision. And the facts for this Court's consideration are contained within the trial court's

reasoning set forth in its decision or thought making or rationale prior to imposing a sentence."
RP (Oct. 31, 2019) at 33-34.

Sanchez then stated that he had been resentenced in the 2018 case and that he was resentenced to 60 months rather than the original 20 months. Sanchez commented that this made this sentencing factually distinct from the original sentencing. He asked the court to run the sentences in the two cases concurrently in light of this change.

The trial court denied this request, but it invited the parties to make a request for concurrent sentences in the other case. The court also declined to consider Sanchez's request to hear argument regarding some of the community custody conditions stated in Appendix H.

The trial court imposed the same sentences and exceptional sentence that the trial court imposed. The court also ordered that Sanchez pay a $500 VPA and comply with the conditions stated in Appendix H. And the court ordered that Sanchez have no direct or indirect contact with RN and issued a separate postconviction no-contact order to that effect.

*Appeal from Resentencing*

Sanchez filed a notice of appeal from the resentencing. This court consolidated Sanchez's PRP and the appeal.

## ANALYSIS

A.    DIRECT APPEAL FROM RESENTENCING

In his direct appeal from his resentencing, Sanchez argues that the trial court erred by (1) not holding a full de novo sentencing hearing; (2) not considering his evidence of rehabilitation; and (3) not reviewing the community custody conditions and no-contact order that he attempted to challenge at the resentencing hearing. We agree.

1.    Legal Principles

In *State v. Vasquez*, the Supreme Court expressly rejected the argument that when a judgment and sentence has been vacated because the defendant's offender score has changed, the resentencing should be limited in scope.  4 Wn.3d 208, 216-17, 560 P.3d 853 (2024).[4]  The court stated that at a resentencing hearing, "a resentencing judge has wide discretion to consider what sentence is appropriate, the same as exists in any sentencing.  Such a decision necessarily allows the court to consider all arguments and evidence presented."  *Id.*  at 215.  Further, "[t]he resentencing court was . . . not bound to the decision of the earlier sentencing judge and had broad discretion to depart from an earlier sentence and consider sentencing issues that may not have been considered previously."  *Id.*  at 216.  The court stated, "The error occurred in treating a resentencing hearing as 'limited' in scope.  It is a sentencing hearing, which is not limited in scope. . . . Vasquez did not get the 'de novo' resentencing that the SRA[5] requires."  *Id.* at 218-19.

An exception exists when the appellate court expressly limits the scope of the proceedings on remand.  *Id.* at 215.  "Though a trial court's discretion to resentence can be limited by an appellate court's mandate, where no such limitation exists, the trial court has the authority to consider issues and evidence that were not the subject of earlier proceedings."  *Id.*

The court concluded,

> We hold that at a resentencing hearing, the court has the same discretion as an original sentencing judge.  The parties have the same opportunity to present mitigating and aggravating factors at the resentencing as they have at an original sentencing.  Under the SRA, a judge is free to consider any and all issues related to

---

[4] Only four justices signed the lead opinion in *Vasquez*.  4 Wn.3d at 219.  But all the other justices joined concurring opinions that agree that a full resentencing was required.  *Id.* at 219-27.

[5] Sentencing Reform Act, chapter 9.94A RCW.

sentencing and to decide which factors to consider and apply in reaching a final decision. The important components of the process are that parties be allowed to present their arguments and that the judge exercises their independent discretion in sentencing.

*Id.* at 219.[6]

2.    Failure to Conduct Full Resentencing

Here, this court's opinion in Sanchez's prior appeal clearly remanded this case for resentencing following the vacation of an offense that contributed to Sanchez's offender score, not merely for a ministerial correction of the original sentence. The opinion expressly remands with instruction that the trial court "correct Sanchez's judgment and sentence and *resentence* him in light of the reversed conviction." *Sanchez*, No. 53296-4-II slip op. at 27.

A further indication that this court's remand for resentencing was not limited is the court's refusal to address whether the exceptional sentence was justified or whether the sentence imposed was clearly excessive because the resentencing court could address this issue on remand. *Id.* The nature of the remand and the evidence that this court anticipated that the resentencing court could address remaining issues supports the conclusion that the remand was for a full resentencing.

Here, the record shows that the resentencing court did not exercise its full discretion when resentencing Sanchez. Instead, the court stated that its sole responsibility was to determine, based on the existing record, the original sentencing court's intent when it sentenced Sanchez. And the court entered a judgment and sentence that was identical to the original judgment and sentence without independently exercising its discretion.

---

[6] Vasquez was decided after the resentencing in this case.

Because this court remanded for resentencing and the trial court failed to follow this court's directive to resentence Sanchez, we once again vacate the sentence and remand for a full, "de novo" resentencing consistent with *Vasquez*.

### 3. Evidence of Sanchez's Rehabilitation

Sanchez argues that the trial court erred when it concluded that it did not have the discretion to consider evidence of his rehabilitation at resentencing. Sanchez relies on *State v. Dunbar*, in which Division Three of this court held that a trial court can consider evidence of the defendant's rehabilitation at resentencing. 27 Wn. App.2d 238, 247-48, 532 P.3d 652 (2023).

Here, the trial court suggested that rehabilitation evidence could not be considered at resentencing. But the parties should have the same opportunity to present mitigating and aggravating factors at the resentencing as they have at an original sentencing. *Vasquez*, 4 Wn.3d at 219. "Under the SRA, a judge is free to consider any and all issues related to sentencing and to decide which factors to consider and apply in reaching a final decision. The important components of the process are that parties be allowed to present their arguments and that the judge exercises their independent discretion in sentencing." *Id*.

However, the trial court did not expressly determine whether to consider rehabilitation evidence because it limited its consideration to whether the original sentencing court would have imposed the same sentence. Because the trial court has not had the opportunity to consider this argument and we are remanding for a second resentencing, we decline to address this issue. Sanchez can raise this issue again at the new resentencing.

### 4. Other Issues

Sanchez argues that the trial court erred in running his sentence consecutively to the sentence for the 2018 conviction and challenges several of the community custody conditions

imposed in the judgment and sentence and Appendix H, the no-contact order prohibiting contact with RN, and the imposition of the VPA.[7]  Because we are remanding for resentencing, we decline to address these issues.  Sanchez can raise these issues again at his new resentencing.[8]

5.    SAG Claims

In his SAG, Sanchez argues that (1) the resentencing court erred when it failed to conduct a de novo resentencing and failed to consider his rehabilitation evidence or challenges to his community custody conditions and the no-contact order; (2) the resentencing court made several additional errors during the resentencing; (3) the resentencing court imposed improper community custody conditions; (4) the no-contact order interferes with his right to parent; and (5) the prosecutor breached the plea agreement at the resentencing hearing.  He also alleges that numerous errors occurred prior to his guilty plea and during his first sentencing hearing.  And he further alleges error with respect to the 2018 case.

Because we hold that the resentencing court erred by not holding a full resentencing and remand for a second resentencing, the first five issues listed above are either resolved or can be addressed at the resentencing.  Regarding the alleged errors that occurred before his guilty plea or during his first sentencing hearing and the alleged errors related to the 2018 case, this is an appeal from the resentencing.  So these issues are outside the scope of this appeal and we decline to address them.

---

[7] In his PRP, Sanchez also challenges various conditions in Appendix H (which he misidentifies as Appendix F) and the no-contact order.  Because we hold that Sanchez can raise these issues at resentencing, we do not address these PRP arguments separately.

[8] We acknowledge that the State has conceded that some of the community custody provisions in Appendix H and the VPA should be stricken or corrected.  The State can present these concessions on remand.

B.      PRP CLAIMS

In his PRP,[9] Sanchez argues that (1) his guilty plea was invalid; and (2) his original

sentencing in 2019 was invalid because the trial court forced him to appear in restraints without

conducting an individualized analysis and this tainted his new sentence because the resentencing

court merely adopted the original sentencing decision.  These arguments fail.

1.      PRP Principles

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1)

a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect

of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice.  *In re*

*Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018).  Establishing "actual and

substantial prejudice" means more than showing a possibility of prejudice; the petitioner must

establish that if the alleged error had not occurred, the outcome more likely than not would have

been different.  *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

2.      Validity of Guilty Plea

Sanchez argues that he should be entitled to withdraw his guilty plea because the trial

court told him during the plea colloquy that the court would be limited to imposing a standard

range sentence.  He contends that without this incorrect information, he more likely than not

would have decided to reject the plea offer and continue with the trial.  He also argues that the

trial court improperly participated in the plea negotiation, rendering his plea involuntary.  We

disagree.

---

[9] Sanchez originally filed this PRP as a motion in the trial court. The court transferred the motion
to this court for consideration as a PRP under CrR 7.8(c)(2).  Although Sanchez has filed another
PRP, *In re Personal Restraint of Sanchez*, No. 57184-6-II, that PRP does not challenge his
judgment and sentence, so his current PRP is not a successive PRP.

a.  Additional Facts

While representing himself during jury selection, Sanchez asked to speak privately with Patrick O'Connor, the director of the Thurston County Office of Public Defense, about the possibility of having standby counsel.  After meeting with Sanchez, O'Connor advised the trial court that the State had extended a plea offer to Sanchez, that Sanchez was reviewing the offer, and that Sanchez was asking for appointment of standby counsel to assist in reviewing the offer. The court appointed standby counsel to advise Sanchez regarding the plea offer.

After a recess during which Sanchez was able to speak with his standby counsel, standby counsel advised the trial court that although some details remained to be worked out, Sanchez was going to accept the State's plea offer.  After a brief recess, Sanchez's standby counsel advised the trial court that he had reviewed the plea statement line by line with Sanchez and that Sanchez was asking the court to accept his change of plea.

The trial court reviewed Sanchez's plea statement.  Sanchez acknowledged that his standby counsel had read the document to him, that he understood it, and that he had signed it. The court then advised Sanchez of the rights he was forfeiting by pleading guilty and the standard sentencing ranges, terms of community custody, and maximum penalties for each offense.

The trial court also discussed the State's sentencing recommendation, noting that this was not an agreed-to sentencing recommendation and that the parties had not yet agreed to Sanchez's criminal history and offender score.  The court confirmed that Sanchez understood that he could still make arguments at sentencing related to his offender scores.

Then the trial court described the State's sentencing recommendations.  Sanchez acknowledged that the State's recommendation included a request that the burglary sentence

would run consecutive to the other sentences and that the other offenses would run concurrent to

each other.

> The following discussion then ensued:

> THE COURT: That is the State's recommendation, but my next statement is going to be, do you understand that the Court doesn't need to follow anyone's recommendation but can impose any sentence allowed under the law?

> [SANCHEZ]: Inside the thing or except --

> THE COURT: *Within the standard sentence range, so that is a limitation I have in these circumstances.*

> [SANCHEZ]: Sorry. Sorry. Okay. Yeah.

> THE COURT: You understand that?

> [SANCHEZ]: Yes

RP (53296-4-II) (April 10, 2019) at 274 (emphasis added).

The trial court then accepted Sanchez's guilty plea to first degree burglary, indecent

liberties, witness tampering, felony violation of a pretrial no-contact order, and gross

misdemeanor cyberstalking.

Section 6(k) of Sanchez's plea statement, which Sanchez signed and acknowledge in

court, stated, in part,

> The judge does not have to follow anyone's recommendation as to sentence. *The judge must impose a sentence within the standard range unless the judge finds substantial and compelling reasons not to do so* (except as provided in paragraph 6(i)). I understand the following regarding exceptional sentences:
> . . . .

> (ii)  *The judge may impose an exceptional sentence above the standard range if I am being sentenced for more than one crime and I have an offender score of more than nine.*

CP (53296-4-II) at 47 (emphasis added).

At the sentencing hearing the State requested sentences at the top of the standard sentencing ranges for each offense and requested that the trial court impose an exceptional sentence by running the first degree burglary sentence consecutive to the other sentences. As noted above, the trial court ultimately sentenced Sanchez within the standard range for each offense, but it imposed an exceptional sentence under the free crimes aggravator by running the witness tampering sentence consecutive to the other sentences.

### b. Legal Principles

A guilty plea is involuntary when it is based on misinformation of sentencing consequences. *State v. Willyard*, 3 Wn.3d 703, 713, 555 P.3d 876 (2024). Such misinformation entitles a petitioner to relief if it resulted in actual and substantial prejudice. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 603, 316 P.3d 1007 (2014).

### c. Misinformation

Sanchez argues that his guilty plea is invalid because the trial court told him during the plea colloquy that the court would be limited to imposing a standard range sentence. He contends that this error resulted in actual and substantial prejudice because, contrary to the court's statement, the court imposed an exceptional sentence. He also contends that without this incorrect information, he would more likely than not have rejected the plea offer and proceeded with the trial.

The trial court's brief statement was incorrect or incomplete. As Sanchez's plea statement advised Sanchez, the trial court was not prohibited from imposing an exceptional sentence if the defendant is being sentenced for more than one offense and has an offender score of more than 9 points.

But this misstatement does not automatically entitle Sanchez to relief. He must show that the court's misstatement resulted in actual and substantial prejudice. *Stockwell*, 179 Wn.2d at 603. To establish actual and substantial prejudice, Sanchez must show that "a rational person in his situation would more likely than not have rejected the plea and proceeded to trial." *State v. Buckman*, 190 Wn.2d 51, 69, 409 P.3d 193 (2018).

Although Sanchez contends that *he* would not have chosen to plead guilty if he were potentially subject to an exceptional sentence outside of the standard range, that assertion merely establishes what he alleges he would do, not what a rational person would do.[10] Further, his statement is belied by the fact he agreed to the guilty plea knowing that (1) the State was planning to recommend an exceptional sentence based the free crimes aggravator, and (2) his plea statement expressly stated that the court could impose an exceptional sentence based on the free crimes aggravator if he was being sentence for multiple crimes and his offender score was more than 9 points.

In addition, even though the court's misstatement suggested that Sanchez could not be subject to a sentence longer than the standard ranges for the offenses and the falsity of this statement would make the plea more risky for Sanchez, the plea still offered significant benefits that a rational person likely would not reject. For instance, the plea reduced his charges from 16 counts to five counts. And the plea no longer potentially subjected him to lifetime indeterminate sentences under former RCW 9.94A.507(2008), because it removed the first degree rape charge and the sexual motivation allegation from the first degree burglary charge.

---

[10] This assertion is also questionable in light of the fact Sanchez failed to challenge his guilty plea on this ground when he filed his CrR 7.4 and CrR 7.8 motions. *Sanchez*, No. 53296-4-II, slip op. at 14.

Because Sanchez derived a substantial benefit from his plea, we hold that a rational person more likely than not would not have rejected the plea and proceeded to trial. Because Sanchez does not establish that the trial court's statement caused actual and substantial prejudice, this argument fails.

> d. Participation in Plea Negotiations

Sanchez also asserts that the trial court rendered the plea involuntary by participating in the plea negotiations when it assured Sanchez that the sentence would be within the standard range, citing *State v. Wakefield*, 130 Wn.2d 464, 471-75, 925 P.2d 183 (1996). But this case is easily distinguished from *Wakefield*.

In *Wakefield*, the trial court's involvement occurred before the defendant accepted the plea offer and was intended to encourage the defendant to agree to the plea offer. *Wakefield*, 130 Wn.2d at 468-69. In contrast, when the trial court here made its challenged statement, the court was not involved in the plea negotiations. The court's statement was made during the plea colloquy after the plea negotiations had already occurred and Sanchez had accepted the offer. And the court's comments were not intended to persuade Sanchez to agree to the plea offer, but to ensure that Sanchez's plea was knowing, intelligent and voluntary *after* Sanchez already had accepted the plea offer. Unlike the statements in *Wakefield*, the court's statements here were not intended to assist in the plea negotiations. Accordingly, this argument fails.

> 3. Restraints at Original Sentencing

Sanchez argues that the trial court in the original sentencing required him to be sentenced while in restraints without first conducing the individualized inquiry required under *State v. Jackson*, 195 Wn.2d 841, 854, 467 P.3d 97 (2020). And he argues that because the resentencing

court based its sentencing decision on the original sentencing court's decision, his resentencing was tainted by the unconstitutional restraints.

To the extent Sanchez is arguing that his resentencing was tainted by this alleged error, that claimed error is now moot because we now vacate the sentence imposed on remand and remanded for a second resentencing. To the extent Sanchez may also be challenging his original sentencing, that argument also is moot because the original sentencing was vacated. Accordingly, this argument fails.

CONCLUSION

We vacate Sanchez's sentence and remand for full resentencing consistent with this opinion. We deny Sanchez's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

GLASGOW, J.