# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JAMES WAYNE ANDERSON,<br><br>Appellant. | No. 59813-2-II<br><br><br><br>PUBLISHED OPINION |

CRUSER, C.J.—James Wayne Anderson appeals the trial court's order amending his sentence based on his new offender score. Anderson argues that the trial court should have vacated his entire judgment and sentence and conducted a de novo resentencing, at which Anderson would have the opportunity to allocate and present mitigating evidence. The State argues that Anderson was not entitled to vacation of his judgment and sentence or to be resentenced, but that even if he was, vacating the judgment and sentence would not affect the underlying factual findings in support of his exceptional sentence. The State concedes, however, that if Anderson was entitled to a full resentencing hearing, he did not receive one and that a resentencing hearing would be required during which Anderson can allocute and present mitigating evidence and argument. The State argues that if resentencing is required, the resentencing court is permitted to rely on the original factual findings in support of an exceptional sentence if it determines, in its discretion, that an exceptional sentence above the standard range is warranted.

We hold that the trial court vacated Anderson's judgment and sentence when it revisited his sentence and exercised discretion in changing it. We also hold that the trial court erred when it failed to conduct a proper resentencing hearing, and that on remand Anderson must be given the opportunity to allocute and present mitigating evidence and argument in support of his sentencing recommendation, including evidence about his youth at the time of the crime and any rehabilitation efforts he has undertaken since his initial sentencing in this case. We further hold that *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) does not apply to Anderson's resentencing and the factual findings made by the original sentencing court in support of his exceptional sentence are unaffected by the vacation of his judgment and sentence. On remand, the superior court has full discretion to impose any sentence it believes is warranted, including a standard range sentence, an exceptional sentence below the standard range, or an exceptional sentence above the standard range so long as it is based on only the two aggravators that were previously affirmed by this court on appeal.

## FACTS

In 1999, James Anderson pleaded guilty to first degree murder, which he committed when he was 19 years old. Anderson's offender score was 3, and his standard sentencing range was 271-361 months. The trial court made two factual findings that could support an exceptional sentence above the standard range: that the victim was particularly vulnerable and that Anderson acted with deliberate cruelty. In pronouncing Anderson's sentence, the court determined that substantial and compelling reasons supported an exceptional sentence above the standard range. The court determined that an appropriate sentence would be double the midpoint of the standard sentencing

range. The court then sentenced Anderson to 632 months. It further indicated that it would have sentenced Anderson to double the midrange, regardless of his offender score.

Anderson appealed his sentence, arguing that there was insufficient factual support for the sentencing court's finding that the victim was particularly vulnerable. Anderson did not challenge the sentencing court's finding that he acted with deliberate cruelty.[1] We affirmed. Following the United States Supreme Court's decision in *Blakely*, 542 U.S. at 296, Anderson filed a personal restraint petition (PRP) arguing that he was entitled to a jury determination of the aggravating factors supporting his exceptional sentence, but we denied his PRP because *Blakely* is not retroactive.

In 2024, Anderson filed a CrR 7.8 motion to vacate his judgment and sentence and for resentencing pursuant to *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). At the trial court's first hearing on the motion, it scheduled a resentencing hearing. On the date of the scheduled resentencing, however, the trial court did not resentence Anderson. Instead, it asked Anderson and the State for briefs addressing whether Anderson was entitled to vacation of his entire judgment and sentence, and if so, whether the court could impanel a jury pursuant to *Blakely*. The court expressed that if it were to resentence Anderson, it would consider "information subsequent to Mr. Anderson being incarcerated," which includes information on young adults' neurodevelopment that Anderson had submitted to the court. Verbatim Rep. of Proc. (VRP) at 21. After another hearing, at which the court heard oral arguments, it decided to adjust Anderson's offender score instead of vacating and resentencing. The trial court expressly stated it was not vacating Anderson's judgment and sentence.

---

[1] *State v. Anderson*, noted at 101 Wn. App. 1078, 2000 WL 1156882, (2000).

The trial court adjusted Anderson's offender score down to 2. Correspondingly, his standard range was reduced to 261-347 months. The State asked the court to utilize the same sentence formula it used before: double the midpoint of the standard range. The court imposed an exceptional 608-month sentence, which is double the midpoint of Anderson's new standard range based on the prior sentencing court's findings of deliberate cruelty and vulnerable victim. Anderson did not allocute or present any mitigating evidence or argument. In its order, the court stated that the judgment and sentence should be amended "due to a re-sentence based upon a Vacated Felony Conviction pursuant to *State v. Blake*." Clerk's Papers at 49 (italics added).

## ANALYSIS

In addressing Anderson's motion to vacate his judgment and sentence and for resentencing, the superior court stated that it did not intend to grant Anderson's motion to vacate. Instead, the superior court characterized its decision to revisit Anderson's sentence as merely an "adjustment" of the sentence. For the reasons we explain below, we hold that the superior court vacated Anderson's judgment and sentence when it amended his sentence and exercised its discretion in setting forth a new incarceration term. We further conclude that the court erred at the resentencing hearing when it failed to invite Anderson to allocute and present the mitigating evidence and argument he wanted the court to consider. At Anderson's resentencing, the trial court may rely on the original sentencing court's findings of vulnerable victim and deliberate cruelty, as *Blakely* is inapplicable to Anderson's resentencing.

## I. VACATION OF THE JUDGMENT

We begin our analysis by recognizing the trial court's observation about the decisions of our supreme court and the court of appeals about whether, or to what degree, a judgment and sentence is vacated when the superior court grants relief under *Blake*:

> I find that when one goes down and reviews these opinions from the Court of Appeals and the Supreme Court and you have one case that is very similar to the next case; however, there is one anomaly and that anomaly exists in another case and—but there's another anomaly that changes the way the Court views things.
> At best, the decisions from the various Courts of Appeal and the Supreme Court, I gotta say, are not one hundred percent consistent.

VRP at 53.

As our examination of the case law below demonstrates, this observation is both fair and understated. Below, we examine the various cases cited by the parties both in their briefing here and at the hearing below in an effort to harmonize the case law.

The procedural posture of this case is as follows: Mr. Anderson was 19 years old at the time of his crime. Mr. Anderson was convicted of first degree murder, not aggravated first degree murder, which means he is not in the *Monschke*[2] class of defendants who are automatically entitled to resentencing based on their age when convicted of aggravated first degree murder and given a life sentence. He was not a juvenile, but he was a young offender who is entitled to have his youth considered prior to being sentenced if he requests such consideration. *State v. O'Dell*, 183 Wn.2d 680, 697-99, 358 P.3d 359 (2015).[3] When he was originally sentenced, Anderson's offender score

---

[2] *In re Pers. Restraint Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021).

[3] In *O'Dell*, the supreme court held that a sentencing court may consider a young adult offender's youthfulness and sentence them below the standard range, and that it "must exercise its discretion to decide when [to do so]." 183 Wn.2d at 699.

contained a point for a now-void conviction of possession of a controlled substance. The removal of this point from his offender score, which reduced his score from 3 to 2, resulted in a lower standard sentencing range. Anderson was originally given an exceptional sentence based on judicial fact-finding that was permissible at the time of his first sentencing. *State v. Anderson*, noted at 101 Wn. App. 1078, 2000 WL 1156882, at *2 (2000). Anderson challenged the factual basis for the vulnerable victim aggravator in his first appeal in the year 2000, but declined to challenge the deliberate cruelty finding. *Id.* at *2. We affirmed the sentencing court's findings and Anderson's exceptional sentence. *Id.* Those factual findings are now final. *State v. Rowland*, 174 Wn.2d 150, 156, 272 P.3d 242 (2012).

In chronological order, our review of the case law is as follows:

1. *State v. Waller*, 197 Wn.2d 218, 481 P.3d 515 (2021):

In 1999, the defendant, who was 21 years old, murdered a man who had seen him and his friends breaking into vehicles. *Waller*, 197 Wn.2d at 220. He was given an exceptional sentence based on deliberate cruelty, as found by the trial court. *Id.* His sentence was affirmed on appeal and became final in 2002. *Id.* In 2018, Waller sought resentencing based on Division One's decision in *In re Personal Restraint of Light-Roth*, 200 Wn. App. 149, 401 P.3d 459 (2017), a decision our supreme court later reversed. *In re Personal Restraint of Light-Roth*, 191 Wn.2d 328, 422 P.3d 444 (2018). The trial court initially set a resentencing hearing without expressly stating that it was granting Waller's motion to vacate his judgment. *Waller*, 197 Wn.2d at 219-20.

The State, unwilling to wait and see if the trial court actually granted Waller's requested relief after a show cause hearing under CrR 7.8(c), sought direct review of the trial court's order retaining the motion following its determination that Waller had made a substantial showing

entitling him to relief—a necessary prerequisite to obtaining a show cause hearing under the rule. *Id.* at 222. The State argued that by setting a hearing and labeling it a "resentencing" hearing, the trial court had effectively granted Waller's CrR 7.8 motion and vacated Waller's judgment and sentence,[4] entitling the State to a direct appeal prior to the actual hearing. *State v. Waller*, 12 Wn. App. 2d 523, 535, 458 P.3d 817 (2020), *rev'd*, 197 Wn.2d 218, 481 P.3d 515 (2021).

The supreme court unanimously agreed with the State. *Waller*, 197 Wn.2d at 230. It began by noting that RAP 2.2(b)(3) plainly provides that the State has the right to appeal an order vacating a judgment. *Id.* at 225. The court further noted that it had "worked on that assumption" even without a case explicitly holding that the State has the right to seek review. *Id.*

The court next discussed the State's contention that even in the absence of an express initial order by the trial court granting Waller's CrR 7.8 motion, it had nevertheless functionally granted the motion by setting a hearing titled a "resentencing" hearing. *Id.* The court stated that this question was "limited and fact-dependent" to the case. *Id.* Because the trial court in *Waller* had taken conflicting actions by first entering an order for resentencing (the relief Waller sought in his motion) without first setting a show cause hearing to decide *whether* to grant Waller's requested relief, as contemplated by CrR 7.8(c), and later clarifying, after the State filed its notice of appeal, that it indeed did grant Waller's CrR 7.8 motion when it ordered resentencing, the supreme court held that the trial court order setting a resentencing hearing operated as an order vacating the judgment. *Id.* at 225-26, 227. The court was persuaded by the "language and context" of the trial court's orders. *Id.* at 227.

---

[4] This, notably, is the *opposite* of what the State argues in this appeal.

The court noted that the "confusion over whether the superior court really granted Waller's motion to vacate" was likely due to the superior court's failure to follow the proper procedure outlined in CrR 7.8(c). *Id.* at 229. The correct procedure, if the superior court determines either that a movant has made a substantial showing they are entitled to relief or that resolution of the motion will require a factual hearing, is for the court to set a show cause hearing to determine *whether* the requested relief should be granted. *Id.*; CrR 7.8(c) (2), (3). Then, if the superior court decides that relief should be granted, it can proceed to provide the relief (such as resentencing a defendant or providing other requested relief). *Waller*, 197 Wn.2d at 229. Instead, in Waller, "the superior court skipped the show cause hearing and immediately ordered a resentencing hearing." *Id.* at 230.

*Waller* appears to support Anderson's contention that by holding a resentencing hearing, even a limited one, the trial court here necessarily vacated his prior judgment and sentence.

2. *State v. McWhorter*, 2 Wn.3d 324, 535 P.3d 880 (2023):

In *McWhorter*, the State appealed the trial court's denial of its motion to transfer McWhorter's CrR 7.8 motion to this court as a PRP. 2 Wn.3d at 326. In its order denying the State's motion to transfer, the superior court said " '[a] resentencing hearing shall be scheduled at the earliest convenient date.' " *Id.* (quoting the record).

Our supreme court again held that by retaining the motion and stating in its order that a resentencing hearing would be scheduled at a future date, the trial court had vacated McWhorter's judgment and sentence. *Id.* at 328.

*McWhorter* also appears to support Anderson's contention that his judgment and sentence was vacated when the trial court held its limited resentencing hearing.

3. *State v. Pascuzzi*, 29 Wn. App. 2d 528, 541 P.3d 528, *review denied*, 3 Wn.3d 1007, 551 P.3d 438 (2024):

In *Pascuzzi*, the defendant was convicted of two counts of child molestation, and the jury also found the aggravating circumstance that Pascuzzi had abused a position of trust in committing the crime. 29 Wn. App. 2d at 530. He was sentenced with an offender score of 8, and the top of his standard range was determined to be 171 months to life. *Id.* at 531. Based on the abuse of trust aggravating circumstance found by the jury, as well as the trial court's determination that other unscored convictions resulted in a presumptive sentence that was clearly too lenient, Pascuzzi was given an exceptional sentence of 200 months to life. *Id.* at 530-31. In announcing Pascuzzi's sentence, the trial court noted that either of the aggravating factors, standing alone, supported the exceptional sentence, and that the length of the exceptional sentence was appropriate " 'regardless of the defendant's offender score.' " *Id.* at 531 (quoting the record).

Pascuzzi subsequently filed a CrR 7.8 motion on the ground that one of the convictions used to calculate his offender score was unconstitutional under *Blake. Id.* at 531-32. The trial court determined that Pascuzzi's motion was not time barred and that he had made a substantial showing that he was entitled to relief pursuant to CrR 7.8. *Id.* at 532. The trial court held a show cause hearing, according to the procedure outlined under CrR 7.8(c), and denied Pascuzzi's motion to vacate and for resentencing. *Id.*

Pascuzzi appealed, arguing that the trial court was required to resentence him because the original sentence was based on an erroneously calculated sentencing range. *Id.* at 533. Pascuzzi contended that it was unclear whether the trial court would have imposed the same sentence had it been aware of the correct sentencing range. *Id.* The trial court, however, determined that Pascuzzi

failed to demonstrate either actual and substantial prejudice or that failure to resentence him would result in a complete miscarriage of justice because the original sentencing court clearly stated that it would have imposed the same even if Pascuzzi's offender score and standard ranges changed, and even if one of the grounds supporting the exceptional sentence was reversed. *Id*. at 530, 534-35. We affirmed the trial court's decision to deny Pascuzzi's motion to vacate, holding that even when the trial court imposes an exceptional sentence after miscalculating the standard sentencing range, resentencing is not required when " 'the record clearly indicates the sentencing court would have imposed the same sentence anyway.' " *Id.* at 534 (quoting *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997)).

The superior court referenced *Pascuzzi* several times at the hearing below, however, its applicability is limited here because the State conceded, several times, that Anderson was entitled to be resentenced and did not ask the court to deny the CrR 7.8(b) motion. Had the superior court here *denied* the CrR 7.8(b) motion, our analysis, and indeed the entire posture of this case, would be different.

4. *State v. Vasquez*, 4 Wn.3d 208, 560 P.3d 853 (2024) (plurality opinion):

Vasquez, at the age of 23, was convicted of first degree murder, among other convictions, and given an exceptional sentence. *Vasquez*, 4 Wn.3d at 210. In 2021, Vasquez filed a CrR 7.8 motion seeking relief from judgment because one of the convictions used to calculate his offender score was unconstitutional under *Blake. Id.* at 210-11. Even without the improper *Blake* point, Vasquez still had an offender score of 9. *Id.* at 211. At sentencing, the State again sought an exceptional sentence. *Id.* Mr. Vasquez wanted to present information and argument to the court regarding his youth at the time of his crime, but both the prosecutor and defense counsel agreed

that the scope of resentencing was limited and that it would not be appropriate for the trial court to consider Vasquez's arguments related to his youth. *Id.* The trial court and the attorneys agreed that the resentencing was "limited." *Id.*

Our supreme court reversed, holding that a *Blake* resentencing hearing is not limited and the resentencing court "has wide discretion to consider what sentence is appropriate" just as in any other sentencing hearing. *Id.* at 215. "We have repeatedly recognized that the discretion of a resentencing court is broad and can be exercised either for or against the petitioner." *Id.* The court further stated,

> In *State v. Kilgore*, 167 Wn.2d 28, 216 P.3d 393 (2009), we also acknowledged the broad discretion of the resentencing court. We stated that on remand, a trial court may review and resentence a defendant or may simply correct and amend the original [judgment and sentence] on affirmed convictions. *Kilgore*, 167 Wn.2d at 40[ ]. Though a trial court's discretion to resentence can be limited by an appellate court's mandate, where no such limitation exists, the trial court has the authority to consider issues and evidence that were not the subject of earlier proceedings. *Kilgore*, 167 Wn.2d at 42[ ].

*Id.*

*Vasquez* supports Anderson's argument that where the trial court agrees to conduct a resentencing, and where the scope of that resentencing had not, prior to the resentencing, been limited by an appellate court's mandate in the case, then the resentencing must be a proper resentencing. A proper resentencing includes, at a minimum, the defendant's opportunity to allocute and to fully present any mitigating evidence or argument he wishes to present and includes the trial court's understanding of its full discretion to consider any appropriate sentence.

5. *State v. Kelly*, 4 Wn.3d 170, 561 P.3d 246 (2024):

Our supreme court decided *Kelly* on the same day as *Vasquez*. The defendant in *Kelly*, like the defendants in *Waller*, *McWhorter*, and *Vasquez*, brought a motion to vacate under CrR 7.8(b).

11

4 Wn.3d at 174-76. Kelly was convicted in two separate cases in 2006. *Id.* at 175. In the first case, he was convicted of unlawful possession of a controlled substance in violation of *Blake*, as well as other "burglary-related convictions." *Id.* In the second case, he was convicted of numerous other felonies and his conviction for unlawful possession of a controlled substance was used to calculate his offender score, again in violation of *Blake*. *Id.* In his CrR 7.8(b) motion, Kelly sought vacation of his unlawful possession of controlled substance conviction as well as resentencing in both cases because the unconstitutional *Blake* conviction had been used in his offender score in both cases. *Id.* at 176-77. The trial court granted Kelly's CrR 7.8 motion in both cases but resentenced Kelly in only the second case. *Id*. Kelly appealed the trial court's refusal to resentence him in the first case, and the State appealed the trial court's determination that *Blake* was material to any of Kelly's sentences other than the sentence on the void conviction for unlawful possession of a controlled substance. *Id.* at 177.

Relevant here, Kelly argued that "once a conviction is vacated, the entire judgment and sentence is also vacated and necessitates resentencing." *Id.* at 188. The supreme court disagreed. *Id.* at 189. Discussing Kelly's reliance on *Waller*, the majority opinion said that *Waller* only dealt with "the narrow issue of whether the State has a right to appeal an order granting a CrR 7.8(b) motion," and that "*Waller* does not support Kelly's claim that vacating a *Blake* conviction results in vacating his entire judgment and sentence." *Id.* The court went on to state that "the existence of a facial sentencing error does not open up the judgment and sentence for other time-barred collateral attacks," and that when a facial invalidity exists, the remedy is to correct the facial invalidity. *Id.* at 190. Citing both *In re Personal Restraint of Snively*, 180 Wn.2d 28, 31, 320 P.3d 1107 (2014) and *In re Personal Restraint of McWilliams*, 182 Wn.2d 213, 218, 340 P.3d 223

(2014), the court observed that resentencing is not the correct remedy for a facially invalid judgment and sentence when the invalidity could be cured by simply correcting the judgment and sentence. *Id.* The court held that, "[a]s in other circumstances where an error appears in the judgment and sentence, . . . vacating Kelly's *Blake*-related convictions was a correction to the judgment and sentence rather than a vacation of the entire judgment." *Id.* at 191.

The dissenting opinion contended that the court's decision "conflicts with *State v. Waller*, *State v. McWhorter*, and other controlling authority holding that a trial court's decision to schedule a resentencing hearing operates to grant a CrR 7.8 motion and vacate the judgment and sentence, requiring de novo resentencing." *Id.* at 197 (Gordon McCloud, J., dissenting).

*Kelly* appears at first to undercut Anderson's argument that the mere setting of a resentencing hearing, alone, entirely vacated his judgment and sentence. It must be noted, however, that although Kelly enjoyed a reduction in his offender score, just like Anderson, the reduction resulted in offender scores ranging from 19 to 23. *Id.* at 176. Thus, unlike in Anderson's case, Kelly's standard range did not change.

6. *State v. Ellis*, ____ Wn.3d ____, 579 P.3d 37 (2025):

In *State v. Ellis*, our supreme court again used broad, definitive language when it began its opinion by stating, "[i]n 2008, when James Ellis was 18 years old, he committed a serious crime for which he received a long sentence. Years later, *a point was removed from Ellis's offender score, which entitled him to a full resentencing*." 579 P.3d 40 (emphasis added). The supreme court in *Ellis* reversed the trial court's imposition of the standard range sentence Ellis had requested because the trial court failed to "meaningfully contend" with its discretion to consider a lower sentence based on Ellis' youth. *Id.* at 46. As demonstrated above, however, the removal of a point

from a defendant's offender score does not automatically entitle a defendant to a full resentencing. *Kelly*, 4 Wn.3d at 182.

  7. *Summary*

  The source of the apparent conflict between some of these cases can be traced to the unfortunate use of broad, unqualified language without noting the factual distinctions on which the disparate outcomes rely. *Waller* and *McWhorter* concerned the State's ability to appeal, prior to any relief having been granted, the trial court's determination that *Blake* was *material* to the defendant's sentence and therefore the CrR 7.8 motion was not time barred. It is the trial court's finding of materiality that allows a resentencing court to entertain a motion for resentencing long after the offender's judgment and sentence became final. In *Vasquez* and *Ellis*, however, the resentencing court, by setting a resentencing hearing, had necessarily determined that *Blake* was, in fact, material to the defendants' sentences but had conducted resentencing hearings that fell short of what is required.

  In *Kelly*, by contrast, the resentencing court determined in the first case that *Blake* caused prejudice to only Kelly's actual conviction for unlawful possession of a controlled substance, not to the sentences on his remaining convictions in that case, and in the second case that Kelly was entitled only to have his firearm sentences run concurrently. *Kelly*, 4 Wn.3d at 176-77. The supreme court agreed with the State that because Kelly's high offender score did not cause his standard sentencing range to change, the inclusion of the *Blake* point in his offender scores was not material to his sentences. *Id.* at 182-85. The materiality of *Blake* to Kelly's case related only to Kelly's actual conviction for unlawful possession of a controlled substance, which was cured

by the trial court vacating that conviction. *Id.* at 190, 196. The supreme court held that no further

relief was required. *Id.* at 196.

Because *Kelly* concerned the State's contention that the trial court erred in determining that

*Blake* was material to the defendant's sentence, the supreme court applied the standards applicable

to PRPs to Kelly's case rather than the ordinary direct appeal standards to be applied in cases

where a sentencing court conducts a resentencing but is alleged to have erred in the manner in

which it conducted the resentencing hearing. *Ellis*, 579 P.3d 43; *Vasquez*, 4 Wn.3d at 220-22

(Madsen, J., concurring).[5]

Thus, the language used in *Waller* and *McWhorter* suggests that a grant of a CrR 7.8(b)

motion, even when the grant is only in part as in *Kelly*, operates to vacate the entire judgment and

---

[5] The opinion in *Kelly* unfortunately conflates the terms "material" and "materiality" with *entitlement to relief*. 4 Wn.3d at 180-82. However, the question of materiality relates to the *time bar*, not to entitlement to relief. In order to overcome the time bar when a CrR 7.8 motion or PRP is brought more than one year after a defendant's case becomes final, a defendant can, among other bases, show that there has been a significant change in the law that is material to their sentence and that retroactively applies to their case. *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 567, 933 P.2d 1019 (1997); *In re Pers. Restraint of Fletcher*, 3 Wn.3d 356, 368, 552 P.3d 302 (2024); RCW 10.73.100(7). Once a defendant demonstrates that a change in the law is material and retroactively applies to their case, the second step is to determine whether the failure to grant the defendant relief would cause either actual or substantial prejudice (in the case of constitutional error) or a complete miscarriage of justice (in the case of nonconstitutional error). *Fletcher*, 3 Wn.3d at 379. In *Vasquez*, the concurring opinion by Justice Madsen, who authored the majority opinion in *Kelly*, correctly separates these two concepts. 4 Wn.3d at 221-22.

> The State successfully argued to the Court of Appeals that Kelly's challenge to his previous judgment and sentences from 2006 and 2009 were collateral attacks. Thus, in addition to showing facial invalidity, or one of the other exceptions under RCW 10.73.100, Kelly had to demonstrate that being sentenced using an incorrect offender score was a fundamental defect resulting in a complete miscarriage of justice.

*Id.* (Madsen, J., concurring)

sentence in all cases. *Kelly*, however, demonstrates that is not the case. Likewise, the mere removal of a point in an offender score does not automatically entitle a defendant to a full resentencing as suggested in *Ellis*. In cases where a judgment and sentence is final, a defendant must demonstrate materiality before they are entitled to resentencing, even if their offender score contains a point for a *Blake* conviction. *Kelly*, 4 Wn.3d at 182; *Pascuzzi*, 29 Wn. App. 2d at 532. Materiality will typically be shown in cases where the standard sentencing range changes in a defendant's favor, although that is not always the case, as demonstrated in *Pascuzzi*.

8. *Holding*

Turning to this case, it is clear that the superior court determined that *Blake* was material to Anderson's sentence and that it granted Anderson's CrR 7.8(b) motion for relief from judgment. It is likewise clear that the trial court resentenced Anderson.

If a defendant's standard range is incorrectly calculated when a court imposes an exceptional sentence, resentencing is appropriate unless the sentencing court would have applied the same sentence anyway. *Parker*, 132 Wn.2d at 189. By contrast, resentencing is not necessary if the adjusted offender score does not result in a different sentencing range. *In re Pers. Restraint of Richardson*, 200 Wn.2d 845, 847, 525 P.3d 939 (2022) (holding that an offender was not entitled to resentencing when his offender score changed from a 10 to a 9, because the standard sentencing range remained the same and his original sentence was within that range); *Kelly*, 4 Wn.3d at 182.

The State attempts to characterize the trial court's actions as a mere correction to Anderson's offender score and standard range that required nothing more than a technical "adjustment" to his sentence. We disagree with this characterization. It is our view that the resentencing court, in choosing to impose the same sentencing formula used by the original

sentencing court, exercised discretion over Anderson's sentence. Anderson's total sentence, in fact, was lowered as a result of the correction of his offender score.

The superior court below conducted a resentencing hearing, but the hearing lacked the hallmark features of a proper sentencing hearing such as the opportunity for allocution[6] and to present argument and evidence to the resentencing court about the impact of Anderson's youth on his crime, if any, as well as any other evidence (such as evidence of rehabilitation) that might bear upon his sentence. *O'Dell*, 183 Wn.2d at 698-99; *Ellis*, 579 P.3d at 43-44. The State properly concedes that if we determine that the trial court exercised discretion in adjusting Anderson's sentence, the resentencing hearing in this case fell short of what the law requires. We accept this concession and conclude that Anderson is entitled to a new resentencing hearing.

It does not follow, however, that the factual findings made by the original sentencing court were vacated when the superior court granted Anderson's request for resentencing, as we explain below.

## II. RESENTENCING ON REMAND

Anderson seeks to foreclose the resentencing court's ability to consider an exceptional sentence above the standard range on remand, claiming that such a sentence is barred. We disagree and hold that the factual findings supporting the aggravating factors of vulnerable victim and

---

[6] Washington law protects the right to allocute for a criminal defendant at sentencing. *State v. Canfield*, 154 Wn.2d 698, 703-04, 116 P.3d 391 (2005). "Allocution is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence. It is the defendant's opportunity to plead for mercy and present any information in mitigation of sentence." *Id.* at 701. Courts should solicit allocution from defendants during sentencing, not require that defendants request it. *State v. Crider*, 78 Wn. App. 849, 856-57, 899 P.2d 24 (1995).

deliberate cruelty made by the original sentencing court are final and remain available to the resentencing court.[7]

This case is squarely controlled by *Rowland*, 174 Wn.2d 150. Rowland was convicted in 1991 of first degree murder and taking a motor vehicle without permission. *Id.* at 152. The sentencing court determined his offender score was 3, that his standard sentencing range was 273-361 months, and that an exceptional sentence was warranted based on a judicial finding of deliberate cruelty. *Id.* The sentencing court imposed a high-end sentence with an additional 180 months as an exceptional sentence. *Id.* In 2007, post-*Blakely*, Rowland filed a PRP in which it was determined that his offender score should have been 2 rather than 3. *Id.* On remand for resentencing, this court stated that the change in the standard range could have affected the length of the exceptional sentence the trial court chose to impose, but that the finding of deliberate cruelty justifying the imposition of the exceptional sentence was unaffected. *Id.* at 153. At Rowland's resentencing, the trial court determined that *Blakely* did not apply and left intact the original exceptional sentence of 180 months but lowered the overall sentence by using the high end of the new standard range based on a score of 2 rather than 3. *Id.*

---

[7] Our opinion in Anderson's original appeal sets forth the sentencing court's findings. The original sentencing court found that Anderson's victim, Ronald Kerr, was a 70-year-old man, and that Anderson was 6 feet 4 inches tall and weighed 245 pounds. *Anderson*, slip op. at *1. The court found that Anderson and his codefendant lured Mr. Kerr into Anderson's home and attacked him violently over a 35-minute period, by kicking him, hitting him in the head with a glass pitcher, tying him up, smothering him with a pillow, and repeatedly attempting to strangle him with a television cable. *Id.* The court found that Kerr was conscious for most of the attack and pleaded with Anderson and his codefendant to stop. *Id.* The court found that the defendants repeatedly kicked Kerr in the head until he fell into unconsciousness. *Id.* Finally, the defendants strangled Kerr until he died. *Id.* The court found that the violence inflicted on Kerr amounted to torture. *Id.* at *2.

On appeal of this new sentence, this court affirmed on the basis that the " 'resentencing court did not exercise independent judgment or discretion when it ordered the exceptional sentence but merely substituted the high end of one standard range for that of another and reimposed the original exceptional sentence.' " *Id.* (quoting *State v. Rowland*, 160 Wn. App. 316, 329, 249 P.3d 635 (2011)).

Our supreme court accepted review on the question of whether *Blakely* applied at Rowland's resentencing. *Id.* at 154. The court began by observing that the trial court, at the resentencing, "did not reconsider the factual findings supporting the exceptional sentence, did not make any new findings regarding deliberate cruelty, and did not change the length of the exceptional sentence." *Id.* at 155. The court further noted that Rowland had challenged the factual basis for the judicial finding of deliberate cruelty in his direct appeal and the finding was affirmed. *Id.* The supreme court affirmed Rowland's sentence, stating,

> Correction of Rowland's offender score error in 2009 did not require inquiry into the underlying basis for the exceptional sentence, and no inquiry was made. The trial court on remand did not redecide the justification for the exceptional sentence, and the change to Rowland's standard range left the justification intact. In essence, no new exceptional sentence was imposed since only the standard range was corrected. *Blakely* prohibits judicial fact finding in cases final after *Blakely*, which did not occur here. Based on the actions of the resentencing court, we hold *Blakely* did not apply at Rowland's resentencing.

*Id.*

*Rowland*, which remains binding authority, supports the State's position that, even if we determine that Anderson is entitled to a new resentencing hearing, *Blakely* would not apply at resentencing. *Id.* Like *Rowland*, Anderson challenged the factual basis for the judicial findings supporting his pre-*Blakely* exceptional sentence and the findings were affirmed. *Anderson*, slip op. at *1. Like *Rowland*, it was later determined that Anderson was sentenced with an offender score

that was one point too high and a standard sentencing range that was, accordingly, incorrect. Like *Rowland*, the trial court lessened the length of Anderson's overall term of incarceration by applying a formula related to the standard sentencing range. In *Rowland*, the trial court used the high point of the standard range and applied an exceptional term to the top of that range. 174 Wn.2d at 152. When the top of the range decreased, the trial court applied the exceptional term to the top of the new range to arrive at the new total term of confinement. *Id.* at 153.

In Anderson's case, the trial court originally used the midpoint of the standard range and doubled it to arrive at the exceptional term. At the *Blake* resentencing hearing, the trial court applied the same formula after the standard range changed and arrived at a new but identically calculated exceptional term. Anderson claims that *Rowland*'s holding is inapplicable because the trial court "altered the exceptional term" of Anderson's sentence. Br. of Appellant at 20. Anderson's new exceptional upward variance is 10 months shorter than his original upward variance,[8] as opposed to Rowland's set-length exceptional sentence of 180 months. However, the important similarity between Anderson's case and Rowland's is that the Anderson court did not reevaluate the original court's reasoning when it imposed a new exceptional sentence, even though it is a different length than the original upward variance. *Rowland*, 174 Wn.2d at 155 ("The trial court on remand did not redecide the justification for the exceptional sentence, and the change to Rowland's standard range left the justification intact."). Simply put, the trial court in Anderson stayed true, "percentage-wise," to what the original sentencing court imposed. Thus, no new

---

[8] Anderson's original sentence was 271 months above the top of the "3" standard range. His new exceptional sentence is 261 months above the top of the "2" standard range.

exceptional sentence was imposed and the trial court did not reevaluate the aggravating factors relied upon by the original sentencing court. Pursuant to *Rowland*, Blakely does not apply.[9]

Anderson's contention that the superior court's grant of his request for resentencing vacated not only his judgment and sentence but also the trial court's factual findings supporting the exceptional sentence is unpersuasive. The factual findings, whether made by a sentencing court in the pre-*Blakely* era or by a jury in the post-*Blakely* era, are not part of a defendant's sentence. These factual findings allow a sentencing court to impose an exceptional sentence when there are substantial and compelling reasons to do so, but they do not *require* a sentencing court to impose an exceptional sentence. A sentencing court is free to disregard these aggravating circumstances and impose a standard range sentence or a downward departure if it feels such a sentence is warranted. While aggravating factors are certainly a *pre-condition* to the imposition of an upward departure from the standard range, an upward departure is never required.[10]

Anderson quotes *State v. Toney*, 149 Wn. App. 787, 792, 205 P.3d 944 (2009), to argue that the scope of resentencing cannot be limited on remand when a sentence has been vacated. Br. of Appellant at 18 ("The court must conduct 'an entirely new sentencing proceeding.' "). This concern is misplaced, however, because the scope of resentencing on remand will not be limited. Again, the presence of factual findings that would support an exceptional sentence above the standard range do not require the court to impose an upward departure nor do they limit the court's

---

[9] Notably, counsel for Mr. Anderson (who also is counsel in this appeal) conceded below that the existing aggravators still stand: "[This] court could simply conclude that the aggravating factor stands, but still impose a proportionate and fair sentence. The finding of an aggravator doesn't require a sentence above the range." VRP at 11.

[10] Again, counsel for Mr. Anderson made this very point below in his oral argument to the superior court.

ability to impose either a standard range sentence or an exceptional sentence below the standard range.

In sum, even though Anderson is entitled to a resentencing hearing, it does not follow that the trial court is *prohibited* from reimposing an exceptional sentence based on the two aggravating factors that were affirmed by this court, are final, and to which *Blake* is immaterial.

On remand, the resentencing court, after hearing full argument from both sides as to their respective sentencing recommendations and considering any mitigating evidence provided by Anderson related to his sentence request, including the impact of his youthfulness on his crime and any evidence related to his subsequent rehabilitation, has the discretion to impose any sentence it deems appropriate. This could include a standard range sentence, an exceptional sentence below the standard range, or an exceptional sentence above the standard range based solely on the judicial findings that have been affirmed by this court and are final. We express no view about what sentence the superior court should impose on remand; we only require that the trial court understand the breadth of its discretion.

In light of *Blakely*'s inapplicability to Anderson's resentencing, we need not reach Anderson's argument that an exceptional sentence cannot be reimposed on remand because, he claims, the original sentencing court's factual findings are insufficient to support the statutory aggravators. Specifically, he argues that the original sentencing court did not find that Anderson knew or should have known the vulnerability of his victim, or that Anderson acted with deliberate cruelty because the crime involved a showing of gratuitous violence that inflicts physical, psychological, or emotional pain. These arguments are a renewed attempt by Anderson to attack

the factual sufficiency for the findings made by the original sentencing judge—a challenge he already made in his direct appeal following his convictions and that this court rejected.

CONCLUSION

We reverse Anderson's sentence and remand to the superior court for proceedings consistent with this opinion. On remand, the factual findings underlying Anderson's exceptional sentence remain, as they are not part of the sentence itself. The superior court has discretion to impose whatever sentence it deems appropriate after providing both Anderson and the State a full opportunity to argue for the sentence that each believes is warranted.

_____
CRUSER, C.J.

We concur:

_____
PRICE, J.

_____
VELJACIC, J.